S13A1231. TEASLEY v. THE STATE.
(749 SE2d 710)

NAHMIAS, Justice.

Appellant Emory Teasley and his brothers Christopher ("Chris") and Tyrone Teasley were indicted and tried together and found guilty of all charges: the malice murder, felony murder, and aggravated assault of James Riden; the aggravated assault of Markez Jones; possession of a firearm during the commission of a crime; and tampering with evidence.[1] We previously affirmed Chris's convictions, see *Teasley v. State*, 288 Ga. 468 (704 SE2d 800) (2010) (raising only a sufficiency of the evidence argument), and we now affirm Appellant's convictions as well.

---

[1] The crimes occurred on October 29, 2005, and a Barrow County grand jury indicted the three brothers on November 8, 2005. The jury returned its guilty verdicts on June 29, 2006, and on the following day the trial court sentenced Appellant to life imprisonment for the malice murder of Riden, 20 concurrent years in prison for the aggravated assault of Jones, and consecutive five- and ten-year terms of imprisonment on the firearm and tampering convictions. The felony murder verdict was vacated by operation of law, and the aggravated assault of Riden was merged into the malice murder conviction. Appellant's trial counsel filed a motion for new trial on July 28, 2006, and his current counsel amended the motion on May 23, 2012. On July 12, 2012, the trial court vacated the felony sentence on the tampering with evidence conviction and entered a misdemeanor sentence. The court denied the remaining grounds of the motion for new trial. On October 23, 2012, the trial court granted Appellant the right to pursue an out-of-time appeal, and he then filed a timely notice of appeal. The case was docketed in this Court for the April 2013 term and orally argued on July 1, 2013.

1. In Chris's appeal, we summarized the evidence presented at trial as follows:

> Construed most strongly in support of the verdicts, the evidence shows that Jones received a call informing him that his 15-year-old cousin Jarvis Evans had been beaten by [Chris] and his two brothers and that [Chris] and Tyrone held Evans while [Appellant] hit him. Later on the same day, [Appellant] called Jones, who said "it's on," and [Appellant] responded, "One of y'all going to die." [Chris] drove his brothers through Evans' neighborhood where they saw Jones and his uncle James Riden in the latter's vehicle, slowing down and staring the Teasley brothers down. Tyrone retrieved his gun from his mother's apartment where [Chris] and [Appellant] lived. [Chris] then drove his brothers to a local convenience store and pool hall [the Big H].
>
> After arriving at the pool hall, Tyrone stated that, if Jones and Riden came there with their complaint, he would kill somebody. [Appellant] said for somebody to call them and send them up there. Jones received a phone call during which he could hear [Appellant] saying to tell them to come on up there. The caller informed Jones that the Teasley brothers were at the pool hall. Riden drove Jones to the pool hall where Jones asked [Appellant] why he jumped on Evans. [Appellant] cursed at Jones, who hit [Appellant] in the jaw. Although Tyrone testified that his brothers did not know that he had a gun, [Appellant] told Tyrone to shoot Jones. As Tyrone was firing his gun and Jones was running away, [Appellant] said to shoot Riden, and Jones then saw his uncle drop to the ground, fatally wounded. [Chris], who had been near [Appellant] just before the shooting, ran to his car and drove his brothers away from the scene of the crimes. Tyrone told [Chris] where to drive and threw the gun out the car window into a wooded area.

*Teasley* at 468-469. Although the Teasleys claimed that Tyrone shot at Riden and Jones in self-defense, several eyewitnesses said that they did not see either victim with a gun, and no gun was found on Riden or Jones or at the crime scene.

Viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to reject Appellant's justification defense and find him guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781,

61 LE2d 560) (1979). See also OCGA § 16-2-20 (parties to a crime); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. During the trial, at which Chris did not testify, the court admitted into evidence statements that Chris and Appellant had made to the police shortly after the shootings. Each statement was redacted to eliminate any mention of co-defendants.[2] Appellant contends that because Chris's statement was inconsistent with his own statement, the jury could not possibly follow the court's limiting instruction to consider Chris's statement only against Chris, resulting in a violation of Appellant's Sixth Amendment right of confrontation under *Bruton v. United States*, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968). We disagree.

" 'A defendant's Sixth Amendment right to be confronted with the witnesses against him is violated when co-defendants are tried jointly and the testimonial statement of a co-defendant who does not testify at trial is used to implicate the other co-defendant in the crime.' " *Herbert v. State*, 288 Ga. 843, 848 (708 SE2d 260) (2011) (citing *Bruton*). However, it is well-settled that if a co-defendant's statement does not refer to the existence of the defendant and is accompanied by jury instructions limiting its use to the case against the co-defendant giving the statement, the defendant's confrontation right is not violated even though, in light of the other evidence at trial, the jury might infer from the contents of the co-defendant's statement that the defendant was involved in the crimes. See *Colton v. State*, 292 Ga. 509, 511 (739 SE2d 380) (2013). See also *Gray v. Maryland*, 523 U. S. 185, 191 (118 SCt 1151, 140 LE2d 294) (1998) (holding that " 'the Confrontation Clause is not violated by the admission of a

---

[2] As admitted at trial, Chris's statement was as follows:

Chris went to the Big H. Chris was standing by the trash can five to six feet from the door of the Big H. Chris did not see James or Markez arrive. Markez came around the corner. Without a word, Markez throws a punch. Immediately after the punch, Markez and James reach for guns. James did not shoot his gun. Chris makes no mention of Markez shooting his gun. Chris heard two shots. James and Markez run away. Chris runs and gets in his car. Chris drives away.

Appellant's statement was as follows:

Emory was at the Big H. Markez and James pull up in a white Range Rover. Markez asks Emory what happened with Jarvis. Emory explains to Markez about what happened with Jarvis. Markez hits Emory. James and Markez each pull out a pistol. James has a chrome 9 millimeter or .380 or .45. Markez has a baby 9 millimeter or a .380. There's a standoff, and Emory tells them to put the gun down. Everything shifts to the side of the building. James and Markez both shoot their guns. The first shot came at Emory. Emory heard eight to nine shots.

nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence' " (citation omitted)).

Chris's statement does not mention Appellant or implicate him by itself, and the trial court gave a proper limiting instruction. Thus, even though Chris's statement was inconsistent to some extent with Appellant's statement and the jury might have been able to infer from other evidence that Appellant was involved in the crimes, the admission of Chris's statement did not violate Appellant's right of confrontation.

Appellant also complains that the prosecutor's comment during his opening statement that Chris and Appellant gave separate statements that did not match improperly asked the jury to consider Chris's statement directly against Appellant, undoing the effect of the trial court's later limiting instruction. However, Appellant did not make a contemporaneous objection on the ground that the prosecutor was improperly linking the brothers' statements, and he is therefore procedurally barred from raising this complaint on appeal. See *Johnson v. State*, 292 Ga. 785, 787 (741 SE2d 627) (2013).

In any event, any error in the prosecutor's opening statement was harmless beyond a reasonable doubt. See *Ardis v. State*, 290 Ga. 58, 62 (718 SE2d 526) (2011) (explaining that the test for determining whether a *Bruton* violation is harmless is whether the constitutional error was harmless beyond a reasonable doubt). In his opening remarks, the prosecutor did not specify any inconsistencies between the two brothers' statements; the trial court later ruled that the prosecutor could not do so during the trial or in closing argument; and the prosecutor complied with that ruling. In addition, Appellant's statement was much more inconsistent with the other evidence in the case, including Tyrone's testimony that only Riden had a gun, and overall the State presented a strong case against Appellant. For these reasons, any error in the prosecutor's passing comment during opening statements was harmless beyond a reasonable doubt.

3. Appellant also contends that the trial court erred in admitting his statement into evidence, asserting that he was in police custody at the time he made it but was not advised of his constitutional rights as required by *Miranda v. Arizona*, 384 U. S. 436, 444 (86 SCt 1602, 16 LE2d 694) (1966). We again disagree.

A person is considered to be in custody and *Miranda* warnings are required when a person is (1) formally arrested or (2) restrained to the degree associated with a formal arrest. Unless a reasonable person in the suspect's situation would

perceive that he was in custody, *Miranda* warnings are not necessary. In reviewing a ruling on the admissibility of a defendant's statements where the facts are disputed, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, but we independently apply the law to the facts.

*Durden v. State*, 293 Ga. 89, 95 (744 SE2d 9) (2013) (citations and punctuation omitted). Because it is undisputed that Appellant was not formally arrested at the time he spoke to the police, the question is whether a reasonable person in his situation would have perceived that he was in police custody. See *Schutt v. State*, 292 Ga. 625, 629 (740 SE2d 163) (2013).

(a) Pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964), the trial court conducted a hearing on the third day of trial to determine whether Appellant's statement (and Chris's statement) would be admissible. The day before, Lieutenant Curott had testified that he received word on the night of the shootings that Appellant and Chris were on their way to the Winder police station of their own accord, and he instructed two officers to meet them there and take them into custody. He also said that he told Riden's family that the "two of them were in custody," but he did not specify when he spoke to the family.

At the *Jackson-Denno* hearing, Detective Willoughby testified that he also learned that the two brothers were on the way to the police station and drove there to meet with them. When he arrived, the brothers were sitting in the lobby, with no officers standing around them. After introducing himself, the detective interviewed Chris for five to ten minutes, then Appellant for the same amount of time. He conducted the interviews in an unlocked room in which the police interviewed victims and witnesses as well as suspects. Detective Willoughby testified that the brothers were not in custody and were never told that they could not leave. He added that Appellant willingly talked to him and never asked for an attorney or to leave. Detective Willoughby was unaware of Lieutenant Curott's directive to two other officers to take the brothers into custody, and it was not communicated to Appellant or Chris. The detective decided to arrest the brothers only after the interviews were completed and he had consulted with an assistant district attorney.

Under these circumstances, the trial court did not err in concluding that a reasonable person in Appellant's situation would not have perceived that he was in police custody. See *Schutt*, 292 Ga. at 629 (holding that appellant's contention that her statement was inadmissible because she was not advised of her *Miranda* rights was

without merit in part because, while an officer found "Appellant's story suspicious, he did not communicate his suspicions to her and at no time implied that she was under arrest"). Accordingly, based on the evidence presented at trial, the court correctly denied Appellant's motion to suppress his statement to the police.

(b) Appellant contends, however, that evidence presented after trial shows that he actually was in custody when he made his statement. At the hearing on his motion for new trial, Appellant called Lieutenant Curott as a witness. The lieutenant testified that shortly after the crimes, he got a call from dispatch that Appellant and Chris were on the way to the police station to turn themselves in. He then asked two officers, whom he did not name, to go to the station and take the brothers into custody. He did not know whether the officers did so or, if they did, what time they arrived at the station or what happened once they arrived. Appellant also called Officer Garrett to testify. Officer Garrett said that he went to the police station at someone's request to meet Appellant and Chris, but he did not say whether he was directed to take the brothers into custody or whether he did so. He added that he did not remember much of what happened on that night seven years earlier, but he recalled that the brothers "showed up" and Detective Willoughby then talked to them.

Appellant also testified at the motion for new trial hearing, saying that he and Chris went to the police station to tell their version of what had happened and to take out warrants on Jones and Riden. When they arrived at the station, Officer Garrett and a second officer met them. While in the parking lot, Riden's son drove up with some other people in his car and started "cursing and stuff." The officers told them to leave and took the brothers inside, where they took seats in the lobby. Appellant claimed that the officers stood beside him and Chris, asking them "crazy questions," and when he told the officers that he wanted to take out warrants, he was told that he would have to wait on Detective Willoughby to arrive. Appellant also claimed that one of the officers told the brothers they could not leave until Detective Willoughby arrived and refused to let Appellant go outside to the car to charge his cell phone. Appellant said that he did not believe that he was free to leave before he was interviewed by the detective.

Appellant cannot rely on evidence presented after trial to show that the trial court erred in admitting his statement at trial — a decision the court had to make based on the evidence it had at that time. The evidence Appellant offered after trial is relevant only to his claim that his trial counsel was ineffective in not presenting that evidence at trial, the claim we turn to next.

4. Appellant contends that his trial counsel provided constitutionally ineffective assistance by failing to call Lieutenant Curott and Appellant as witnesses at the *Jackson-Denno* hearing and by allegedly failing to inform Appellant that he had a right to testify at that hearing.

> To prevail on this claim, Appellant must show that his trial counsel's performance was professionally deficient and that, but for the deficiency, there is a reasonable probability that the outcome of the trial would have been more favorable to him. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SC 2052, 80 LE2d 674) (1984). "This burden, although not impossible to carry, is a heavy one." *Young v. State*, 292 Ga. 443, 445 (738 SE2d 575) (2013). And the reviewing court need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U. S. at 697.

*Boothe v. State*, 293 Ga. 285, 295 (745 SE2d 594) (2013).

As discussed previously, Lieutenant Curott testified at trial before the *Jackson-Denno* hearing and said that he directed two officers to meet Appellant and Chris at the police station and take them into custody. Detective Willoughby was questioned about that directive at the hearing, and trial counsel referenced Lieutenant Curott's testimony in arguing that Appellant was in custody when he was interviewed. Appellant does not identify any other significant testimony from Lieutenant Curott that should have been presented at the *Jackson-Denno* hearing; indeed, the lieutenant's testimony at the motion for new trial hearing, where he clarified that he did not know what, if anything, the officers did with Appellant at the police station, was less helpful to Appellant than the lieutenant's testimony at trial. Thus, Appellant has not shown that his trial counsel's failure to call Lieutenant Curott at the *Jackson-Denno* hearing constitutes deficient performance or caused him any prejudice.

As for Appellant's own potential testimony at the *Jackson-Denno* hearing, pretermitting whether trial counsel was deficient in allegedly failing to advise him of his right to testify and in not calling him as a witness, Appellant has shown no prejudice.[3] Appellant's testimony at the motion for new trial hearing was not supported by any

---

[3] While we need not resolve the deficiency issue, we note that trial counsel testified at the motion for new trial hearing that she wanted Appellant's statement to come into evidence because it supported the justification theory of the defense, although she also wanted the *Jackson-Denno* hearing as an opportunity to hear and cross-examine the State's police

other witness, was contradicted by Detective Willoughby's testimony at the *Jackson-Denno* hearing, and was rejected by the trial court, which was entitled to determine witness credibility and resolve conflicts in the evidence on this suppression issue. See *Henry v. State*, 279 Ga. 615, 618 (619 SE2d 609) (2005). The court concluded that the evidence presented at the motion for new trial hearing would not have changed its ruling that Appellant was not in custody when he spoke to the police. Thus, even if Appellant had testified similarly at the *Jackson-Denno* hearing, the trial court's ruling admitting his statement would have been the same and would be upheld on appeal.

Moreover, even if Appellant's statement had been suppressed at trial, there is not a reasonable probability that the result of the trial would have been different. Appellant's statement was not inculpatory on its face; indeed, it supported his defense that the victims were armed and fired at the Teasleys. As noted above, his problem was that his statement was inconsistent with the strong evidence presented against him, including evidence that Appellant told Tyrone to fire at the victims and that the victims were unarmed. In sum, Appellant has not demonstrated a reasonable probability that the outcome of his trial would have been more favorable even if his trial counsel had called him to testify at the *Jackson-Denno* hearing.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 7, 2013.

*Charles E. W. Barrow*, for appellant.

*J. Bradley Smith, District Attorney, Samuel E. Skelton, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General*, for appellee.

---

witnesses. She explained that she did not call Appellant as a witness at the hearing because he was unpredictable and she was not sure what information he might volunteer. See *Brown v. State*, 292 Ga. 454, 456 (738 SE2d 591) (2013) (reiterating that decisions as to what witnesses and other evidence to present are matters of trial strategy and are ineffective only if unreasonable ones no competent attorney would make). On the issue of Appellant's knowledge of his right to testify at the *Jackson-Denno* hearing, although he testified that at the time of the hearing he did not know he had a right to testify, trial counsel testified that it was her normal practice to discuss with clients whether they wanted to testify, she was aware that clients had a right to do so, which she would not violate, and if a client insisted on testifying, she would call them to the stand.