In the Supreme Court of Georgia

Decided: September 14, 2015

S15A0882.  SMITH v. THE STATE.

HUNSTEIN, Justice.

Appellant Courtland Smith was convicted of felony murder and related offenses in connection with the March 10, 2009 death of two-year-old Jaydon Patton.  Smith now appeals his convictions and sentences on the ground that his pre-arrest statement to investigators should not have been admitted at trial. Though we find no error in the verdicts, we do find that the trial court erred in sentencing Smith on one count that should have merged with the murder count, and we therefore vacate that portion of Smith's sentence.[1]

---

[1] Smith was indicted on March 27, 2009 by a Douglas County grand jury on three counts of felony murder and the underlying felonies of aggravated battery and first- and second-degree child cruelty.  Following a jury trial held February 28 through March 3, 2011, Smith was convicted on all counts and was thereafter sentenced to life imprisonment for the felony murder predicated on aggravated battery (Count 6), a 20-year consecutive term for first degree child cruelty (Count 1), and a 20-year concurrent term for aggravated battery (Count 5); the trial court merged the remaining counts for sentencing purposes.  Smith filed a motion for new trial on March 10, 2011, and, following the appointment of new counsel, Smith amended his new trial motion on September 2, 2014.  The trial court denied the motion on September 15, 2014. Smith filed his notice of appeal on October 1, 2014. The appeal was docketed to the April 2015 term of this Court and was thereafter submitted for decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence adduced at trial established as follows. Smith was the live-in boyfriend of Ayanna Patton, Jaydon's mother. On the afternoon of March 10, 2009, Jaydon was admitted to Egleston Children's Hospital with brain swelling, retinal hemorrhages, a leg fracture, and numerous bruises and abrasions on his head and torso. Jaydon had been under Smith's care since that morning, when Patton had left for work. Between 1:30 and 2:00 p.m., Smith drove to Patton's place of employment, summoned her outside to meet him, and told her to get in the car because Jaydon was unresponsive. The couple drove to the local hospital, and Jaydon was air-lifted to Egleston. Jaydon died later that day of his injuries.

At the hospital, physicians questioned Smith about his recollection of the morning and the previous days, but Smith offered limited information. Law enforcement was contacted, and Smith was interviewed that night by Lieutenant Bruce Ferguson at the Douglas County Sheriff's office. During the video-recorded interview, Smith admitted to having been alone in the house with Jaydon for a short interval immediately before discovering the child unresponsive and to having shaken and slapped the child at some point in an effort to revive him. Even when confronted by Lt. Ferguson with a physician's

opinion that Jaydon had suffered abusive head injuries, Smith denied having abused or intentionally harmed Jaydon in any way. After over an hour of questioning, the investigator read Smith his Miranda[2] rights, Smith declined to make any further statements, and Smith was placed under arrest.

Jaydon's pediatric critical care physician testified that he had concluded that Jaydon's brain injuries had likely resulted from forcible strikes to the head and/or severe shaking. Another physician who examined Jaydon at Egleston similarly opined that his injuries had been caused by recently inflicted physical abuse. According to the medical examiner, the cause of death was blunt force trauma to the head and torso.

1. Though Smith has not enumerated the general grounds, we have concluded that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Smith was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. In his sole enumeration of error, Smith contends that the trial court erred in admitting his pre-arrest statement into evidence, contending that the

---

[2]Miranda v. Arizona, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

3

investigator's failure to advise him of his <u>Miranda</u> rights until the end of the interview renders his statement inadmissible. We disagree.

Law enforcement officers are required to give <u>Miranda</u> warnings prior to questioning only where the subject is in police custody, having either been "formally arrested or restrained to an extent associated with such an arrest." <u>Sims v. State</u>, No. S15A0182, slip op. at 5 (3) (decided June 29, 2015). Where one has not been arrested, he will be considered to be in custody only under circumstances where a reasonable person in the same situation would perceive that he was "deprived of his freedom of action in a meaningful way." Id. at 6; accord <u>Teasley v. State</u>, 293 Ga. 758 (3) (749 SE2d 710) (2013). The inquiry focuses not on the interrogating officer's suspicions about the subject of interview but rather whether the circumstances would lead a reasonable person to believe that he was not at liberty to leave. <u>Teasley</u>, 293 Ga. at 762; <u>Sewell v. State</u>, 283 Ga. 558 (2) (662 SE2d 537) (2008). The trial court is to make this determination based on the totality of the circumstances. <u>Bunnell v. State</u>, 292 Ga. 253 (2) (735 SE2d 281) (2013). On appeal, we accept the trial court's factual findings and credibility determinations regarding the admissibility of a defendant's statement unless clearly erroneous; however, where controlling facts

4

are discernible from a videotape and undisputed, our standard of review is de novo. Id.

Here, the trial court held a <u>Jackson-Denno</u>[3] hearing immediately prior to the commencement of trial, at which the court heard testimony from Lt. Ferguson and viewed an excerpt of the video-recorded interview. Lt. Ferguson testified that he and a fellow officer arrived at the hospital after Jaydon had been pronounced dead and discovered that Patton and Smith had already left the hospital. The other officer contacted the couple and arranged to meet them at a nearby gas station to obtain Patton's signature on a medical release form. Once at the gas station, the officers asked Smith and Patton to come to the sheriff's office to be interviewed. The couple agreed and followed the investigators to the sheriff's office in their own vehicle, arriving a few minutes after the officers. Lt. Ferguson testified that Smith was not under arrest at the time the interview began; that the limited information Ferguson had obtained to that point in the investigation was not sufficient to justify Smith's arrest; and that Smith was free to leave at any point during the interview until Ferguson made the decision to arrest and advised Smith of his <u>Miranda</u> rights. The video

---

[3] <u>Jackson v. Denno</u>, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

recording of the interview confirms that Smith was not handcuffed, was given water to drink throughout the interview, and was permitted to keep his cell phone, even at one point interrupting the interview to answer a call from his mother. Lt. Ferguson also testified that no threats or promises were made to induce Smith to talk and that Smith appeared to suffer from no deficiency and to understand the nature of the questions he was asked. Smith offered no evidence to the contrary.

The totality of these circumstances leads inescapably to the conclusion that Smith was not in custody at the time of his interview. See Sims, slip op. at 5-6 (defendant not in custody where defendant willingly accompanied officer to police station, officer made it clear defendant was not under arrest, and defendant was not handcuffed or restrained in the police car or the interview room); DeVaughn v. State, 296 Ga. 475 (4) (769 SE2d 70) (2015) (defendant not in custody where, inter alia, he drove himself to police station at officer's request, was not handcuffed or told he was under arrest, and was permitted to speak to his mother on the phone during the interview); Teasley, 293 Ga. at 762-763 (despite fact that an officer not involved in the interrogation had already ordered defendant's arrest, defendant was not in custody at time of his interview

where he drove himself to police station of his own accord and willingly spoke with detective and where neither defendant nor interrogating officer was aware that arrest was imminent); Fennell v. State, 292 Ga. 834 (2) (741 SE2d 877) (2013) (defendant not in custody where he agreed to ride to police station at officers' request, was not handcuffed or restrained, and was given a beverage and permitted to answer his phone numerous times during the interview). Accordingly, the trial court properly admitted Smith's statement at trial.

3. Though we find no error in the jury's verdicts, we have noted an error with regard to Smith's sentences. As set forth in footnote 1, supra, the trial court imposed a life sentence for felony murder predicated on aggravated battery and in addition imposed a 20-year concurrent term for the same aggravated battery. Because the aggravated battery merges into the felony murder predicated thereon, the trial court erred in sentencing Smith on the aggravated battery. See OCGA § 16-1-7 (a) (1). Accordingly, we vacate Smith's sentence on Count 5. In all other respects, we affirm.

Judgment affirmed in part and vacated in part. All the Justices concur.