**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2017**

# In the Court of Appeals of Georgia

A17A1200. THE STATE v. LICATA.

McFADDEN, Presiding Judge.

Michael Licata was charged with driving under the influence of alcohol to the extent that he was a less safe driver, reckless driving, hit and run, failure to maintain lane, and driving on the wrong side of the roadway. He successfully moved to suppress the results of his field sobriety tests and evidence of his refusal to take a breath test. The state appeals the grant of that motion.

As to the field sobriety tests, the trial court found that Licata was in custody at the time he was asked to perform them and that the *Miranda* warning given to him was insufficient to apprise him of all of his rights under the Georgia Constitution. The state argues that Licata was not in custody at that time and so was not entitled to any warning about his right not to incriminate himself. We hold that regardless of whether

Licata was in custody, he was sufficiently warned of his right not to incriminate himself. While our Supreme Court has recognized that the Georgia Constitution affords rights beyond those afforded by the federal constitution, it has held a *Miranda* warning sufficient as to those additional rights.

The state also argues that Licata was not entitled to counsel when deciding whether to submit to the state-requested breath test, so the trial court erred in excluding evidence of Licata's refusal to take the test on the basis that he had requested an attorney pursuant to a *Miranda* warning. We agree with that argument as well. So we reverse the trial court's grant of Licata's motion to suppress.

1. *Facts*.

When reviewing a trial court's ruling on a motion to suppress, an appellate court must construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court. This means that the reviewing court generally must accept the trial court's findings as to disputed facts unless they are clearly erroneous, although the reviewing court may also consider facts that definitively can be ascertained exclusively by reference to evidence that is uncontradicted and presents no questions of credibility, such as facts indisputably discernible from a videotape.

*Mitchell v. State*, __ Ga. __ (__ SE2d __) (Case No. S17A0459, decided June 26, 2017). So viewed, the facts show that Licata was involved in a traffic accident. He did not stop at the scene of the accident, but drove on, until he was stopped about a mile away by a deputy with the Forsyth County Sheriff's Office, who had been alerted by a "be on the lookout" report. One of Licata's front tires was flat, one tire was missing, and Licata was driving on the rim, causing sparks to fly. The deputy witnessed Licata strike a construction cone and fail to maintain his lane. The deputy stopped Licata, who admitted to having drunk half a bottle of wine.

The arresting officer, another Forsyth County deputy sheriff, arrived at the scene. Licata was outside of his truck, he was not handcuffed, and he had not been placed in the back of a patrol vehicle. The arresting officer called Licata over to the front of the patrol car where the arresting officer was standing (which placed Licata in the range of the dashboard camera), introduced himself, and then said, "Give me one sec. Let me turn some of these lights off, alright."

The arresting officer walked toward the driver side of his patrol car, out of range of the dashboard camera, and called for a wrecker. His car's flashing blue lights were extinguished, and the arresting officer walked back toward Licata, into the range

3

of the dashboard camera, in front of the patrol car. The following exchange then took

place:

> **OFFICER**: I want to talk with you about what's going on tonight, what has happened. Okay. You were involved in an accident with a another vehicle, is that correct?
> **LICATA**: Yes sir.
> **OFFICER**: Okay. Back here on Buford Highway?
> **LICATA**: Right.
> **OFFICER**: Okay. I want to talk to you a little bit about that, okay. But before I do, I'm going to read you something here, okay. [Unintelligible.]
> **LICATA**: Yes, sir.
> **OFFICER**: Okay. Is there any reason you didn't stop for the car?
> **LICATA**: I slowed down and it pulled out in front of me.
> **OFFICER**: It pulled out in front of you?
> **LICATA**: Yes, sir.
> **OFFICER**: Okay. I'd like to continue talking to you about that and some more things but before I do, let me read you something here, okay?
> **LICATA**: Understood.
> **OFFICER**: This is your *Miranda* warning, okay. You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him or her present with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning, if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements. Do you understand each of these rights?
> **LICATA**: Yes, sir.
> **OFFICER**: Okay.

The arresting officer asked Licata questions about the accident and whether Licata

had been drinking.

4

The officer then had Licata complete standardized field sobriety tests, which are at issue.

Licata was arrested after he finished the field sobriety tests.

There followed the conversation leading up to Licata's refusal to submit to the breath test, which is also at issue. The officer explained that he had determined that Licata was a less safe driver. He handcuffed Licata and informed him that he was going to read Licata Georgia's Implied Consent Notice for Persons 21 and over, and that he needed to know what Licata's answer would be. The arresting officer correctly read the notice. He concluded with the question, "Will you submit to the state-administered chemical test of your breath under the Implied Consent law?" Licata responded by asking the arresting officer if the officer could re-administer the tests. The arresting officer responded that they were past that part and that he already had determined that Licata was less safe to drive and his decision was not going to change. The officer explained that he was asking whether Licata would submit to the state breath test that he was requesting. Licata asked, "And the ramification if I don't . . . ." The arresting officer responded, "would you like me to re-read you that notice 'cause it says what happens if you do, what happens if you don't, okay?" Licata said

he would, and the arresting officer re-read the Implied Consent notice. The following exchange then occurred:

> **LICATA**: Can I call my attorney?
> **OFFICER**: No sir, you're unable to at this point. Your decision's solely based on your decision. You're not entitled to an attorney when it comes to making . . .
> **LICATA**: So if I blow this test and I pass the test, I'm free to go?
> **OFFICER**: No, sir. Whether you submit to the test or not, you're still going to be placed under arrest for DUI. The outcome of that isn't going to change. Whatever the number that you blow, is the number you blow and that gets handled in court. But as far as the outcome for right now, you're still going to go to Forsyth County jail. But it's your choice whether you want to submit to the test or not.
> **LICATA**: But there's no choice. . . . I mean there's no. . . . What do you suggest?
> **OFFICER**: I can't suggest anything, sir, you're a grown man, this is your choice. I'm not allowed to. I can't give you any legal advice.
> **LICATA**: And I can't take these tests again?
> **OFFICER**: No, sir. We've moved past that point. I've already made my determination that you are less safe to drive.
> **LICATA**: Are you sure?
> **OFFICER**: Sir, if I had any doubt, you wouldn't be standing in the handcuffs right now.
> **LICATA**: I see. Okay. Um. Can I get my phone and call my attorney?
> **OFFICER**: You can get your phone but you're not entitled to a phone call with your attorney right now, okay, so you have to make that decision on your own, whether or not you will submit to the state breath test that I'm requesting.
> **LICATA**: No, I guess I just won't.
> **OFFICER**: Okay. So you're going to refuse?
> **LICATA**: Yes.
> **OFFICER**: Okay.

2. *Field sobriety tests*.

The state argues that the trial court erred in suppressing the results of Licata's field sobriety tests. The trial court found that Licata was in custody, and although the arresting officer had read Licata a correct *Miranda* warning, the officer did not inform Licata of his right to refuse to perform physical acts as protected by Art. I, Sec. I, Par. XVI of the Georgia Constitution of 1983. The court therefore granted Licata's motion to suppress the results of the field sobriety tests.

Pretermitting whether Licata was in custody at the time he performed the field sobriety tests, we find that the trial court erred in holding that the Georgia constitution requires law enforcement officers to give a warning beyond the *Miranda* warning to encompass the right not to act under the Georgia constitution.

It is true, as the trial court recognized that "[w]hile the language in the United States Constitution has long been construed to be limited to 'testimony' the Georgia Constitution has been construed to limit the [s]tate from forcing the individual to present *evidence*, oral or real." *Creamer v. State*, 229 Ga. 511, 516 (3) (192 SE2d 350) (1972) (emphasis supplied). And it is true that the *Miranda* warning addresses only the right to remain silent. And it is true that our Supreme Court has never

7

addressed the argument that a *Miranda* warning is therefore insufficient to apprise of the additional rights afforded by the Georgia Constitution.

But in *Price v. State*, 269 Ga. 222 (498 SE2d 262) (1998), our Supreme Court held that under Georgia law, an arresting officer's failure to give *Miranda* warnings to a suspect in custody rendered evidence of field sobriety tests inadmissible. Id. at 224-225 (3). The court explained that it was upholding Price's rights under the Georgia constitution — that the outcome would have been different had the appellant raised only a federal challenge to the admission of the field-sobriety-test evidence, "because under the U.S. constitution the prohibition against self-incrimination applies only when the evidence is 'testimonial' and field sobriety tests are not 'testimonial' in nature." Id. at 225 (3) n. 13. So *Price* stands for the proposition that, under Georgia law as well as federal law, a *Miranda* warning to a suspect in custody is sufficient to render evidence of field sobriety tests admissible. See also *State v. Dixon*, 267 Ga. App. 320, 320-321 (2004) ("Under Georgia's protections against the [s]tate compelling an arrestee to give evidence against himself, the result of a field sobriety test performed when a suspect was 'in custody' will be admissible only if the request to perform the field sobriety test was preceded by *Miranda* warnings."); *State v. O'Donnell*, 225 Ga. App. 502, 504 (2) (484 SE2d 313) (1997) (whole court 9) ("field

sobriety tests given to a person under arrest, without giving him or her a *Miranda* warning first, are inadmissible under" former OCGA § 24-9-20 (a), a statute that encompassed the Georgia constitutional right against performing self-incriminating acts and which is now codified at OCGA § 24-5-506 (a)). For these reasons, the trial court erred by granting Licata's motion to suppress the results of his field sobriety tests.

We acknowledge that there is at least arguably tension between our Supreme Court's opinion in *Price* and Art. I, Sec. I, Par. XV of the Georgia Constitution of 1983, as it has been construed in cases like *Creamer,* supra. But whether any such tension is to be resolved by narrowing the holdings of *Price* and similar cases is up to our Supreme Court.

3. *Refusal to submit to the breath test*.

The trial court found that Licata requested an attorney pursuant to the *Miranda* warning and so his refusal to submit to the state-administered breath test should be suppressed.[1] We disagree because the arresting officer was legally correct and

---

[1] In essence, the trial court adopted the "confusion doctrine," a judicially-created exclusionary rule under which "a licensee's refusal to submit to a breath test will be excused if, due to a prior administration of the *Miranda* warnings, the licensee believes that he or she had the right to consult with counsel prior to taking a breath test." *Kurecka v. State*, 67 So. 3d 1052, 1056 (Fla. Dist. Ct. App. 4th Dist. 2010)

9

explicitly clear that Licata did not have the right to consult an attorney before deciding whether to submit to the breath test.

An individual is not entitled to the advice of counsel when he is asked to submit to a breath test under the Georgia Implied Consent Law. *Rackoff v. State*, 281 Ga. 306, 308-309 (1) (637 SE2d 706) (2006). "Access to advice of legal counsel *at the appropriate time* is a right to which the defendant is entitled." *Viau v. State*, 260 Ga. App. 96, 101 (3) (579 SE2d 52) (2003) (citations omitted; emphasis supplied). Here, "[n]othing in the record demonstrates that the officer somehow misled [Licata] to believe that [he] was entitled to an attorney at the time of the breath test." Id. At the beginning of their encounter, the arresting officer did inform Licata that he had "the right to talk to a lawyer and have him or her present with [him] while [he was] being questioned" and that Licata could "decide at any time to exercise [his] rights." But he twice clarified that Licata was not entitled to consult an attorney regarding whether to submit to the state-requested breath test and that he had to make that decision himself.

---

(citation and punctuation omitted).

10

Licata cites *State v. Boger*, 253 Ga. App. 412 (1) (559 SE2d 176) (2002), to support his position that the arresting officer's reading of the *Miranda* warning confused him about his rights and required the exclusion of evidence of his refusal to take the state-requested breath test. On the contrary, *Boger* supports the denial of his motion to suppress. In *Boger,* the arresting officer tried to get Boger to properly breathe through an alco-sensor but failed several times. Id. at 412 (1). Boger then stated that he needed to speak with a lawyer. Id. at 413 (1). The officer informed him that he could have a lawyer after the officer arrested him and took him to jail. Id. Boger responded, "Let's do it that way," so the officer arrested him, read him his implied consent rights, and took him to jail, where Boger refused to submit to an breath test without an attorney. Id. at 413 (1) & (2).

We held that Boger's refusal to submit to the breath test at the jail was properly suppressed because the officer's statement that Boger could have a lawyer "after I arrest you and take you down to the jail" could have mislead Boger into incorrectly believing that he was entitled to counsel prior to completing the breath test. Id. at 413 (2). In contrast, as for the exclusion of evidence that Boger failed to complete the alco-sensor breath test, we held that

11

[t]he officer's explanation informed Boger that he was not entitled to an attorney when the officer repeatedly requested that he breathe into the alco-sensor, but that he could have an attorney once he was arrested and taken to jail. Therefore, Boger's refusal to continue the alco-sensor test could not have been based on a belief that he was entitled to an attorney prior to taking the test. The court erred in excluding evidence of Boger's failure to submit to the alco-sensor test . . . on this basis.

Id. at 413 (1). Similarly, in this case, the arresting officer's explanation informed Licata that he was not entitled to consult an attorney when deciding whether to submit to the breath test. Therefore, Licata's refusal to submit to the state-requested breath test could not have been based on a belief that he was entitled to an attorney prior to taking the test. The trial court erred in excluding evidence of Licata's refusal on this basis.

*Judgment reversed. Bethel, J., concurs fully in Divisions 1 and 3, and specially in Division 2. Branch, J., concurs fully in Division 1 and in the judgment only in Divisions 2 and 3.*

A17A1200. THE STATE v. LICATA.

BETHEL, Judge, concurring specially.

I concur fully in Divisions 1 and 3 of the Presiding Judge's opinion. I do not, however, agree with all that was expressed in Division 2 and therefore concur specially with that portion of the opinion.

The Supreme Court's decision in *Price v. State*[1] answers the question addressed in Division 2. In *Price*, the Supreme Court held that "under Georgia law *Miranda* warnings must precede a request to perform a field sobriety test only when the suspect is in custody." *Price*, 269 Ga. at 225 (3) (punctuation and footnote omitted). Thus, as the majority correctly determined, where as here, a proper *Miranda* warning is given prior to the administration of a field sobriety test, the results of such test are

---

[1] 269 Ga. 222, 224-25 (3) (498 SE2d 262) (1998).

admissible regardless of whether the suspect was in custody at the time. Because *Price* is binding upon this Court, we need not look beyond its core holding in addressing this question. Our state's law on this issue, as announced by the Supreme Court is clear and settled.