305 Ga. 498
FINAL COPY

S18G0563. LICATA v. THE STATE.

PETERSON, Justice.

We granted certiorari to consider what, if any, Miranda-type warning law enforcement must give before asking a suspect in custody to perform acts protected by Georgia's right against compelled self-incrimination under Article I, Section I, Paragraph XVI of the Georgia Constitution of 1983 ("Paragraph XVI"), and whether a suspect in custody is entitled to the advice of counsel when asked to submit to a state-administered breath test. The first question rested on the premise that the suspect in this case, Michael Licata, was in custody at the time he was asked to undergo field sobriety tests, but a review of the record reveals that Licata was not actually in custody. Therefore, we affirm the Court of Appeals's ultimate conclusion that the field sobriety tests were admissible, without answering the first question. We also decline to resolve the issue regarding the advice of counsel, because it was pertinent only to the admissibility of Licata's refusal to submit to a breath test, and this determination

must be reconsidered in the light of our recent opinion in Elliott v. State, 305 Ga. 179 (824 SE2d 265) (2019), wherein we concluded that refusal evidence is inadmissible. Therefore, we vacate the Court of Appeals' opinion regarding the admissibility of the refusal evidence and remand for further proceedings.

The relevant facts are not disputed. Licata's vehicle was stopped by police because it matched the description of a vehicle that had recently been in an accident and had significant front-end damage. Prior to the stop, sparks were coming off the asphalt as Licata had been driving on the vehicle's rims. The police officer who ultimately arrested Licata approached Licata and confirmed with Licata that Licata had been involved in an accident. The arresting officer told Licata that he wanted to discuss the accident but he wanted to read Miranda warnings to Licata first. After doing so, the arresting officer asked Licata several questions about the accident. A short time later, the officer asked Licata to perform field sobriety tests. Licata complied and failed the tests. The officer then placed Licata under arrest for DUI less safe, read the implied consent warning, and asked Licata if he would submit to a breath test. Licata twice asked to call his attorney but was denied that request. Licata ultimately responded that he would not submit to a breath test.

Following his arrest and prior to trial, Licata sought to suppress the results of his field sobriety tests and evidence that he refused to submit to the breath test. The trial court granted Licata's motion, concluding that the field sobriety evaluations should be suppressed because Licata was in custody and was not informed that he had a right to refuse to perform incriminating acts, a right protected by Paragraph XVI. See Olevik v. State, 302 Ga. 228 (806 SE2d 505) (2017). The trial court ruled that Licata's refusal to submit to the breath test should be suppressed because he had requested an attorney pursuant to the Miranda warnings read to him.

The State appealed, and the Court of Appeals reversed. State v. Licata, 343 Ga. App. 874 (806 SE2d 292) (2017). We agreed to hear Licata's challenges on certiorari.

1. In reversing the trial court's suppression of the results of Licata's field sobriety tests, the Court of Appeals relied on our decision in Price v. State, 269 Ga. 222 (498 SE2d 262) (1998), where we stated that "[d]ecisions of this Court and the [C]ourt of [A]ppeals have routinely held that under Georgia law Miranda warnings must precede a request to perform a field sobriety test only when the suspect is in custody." Id. at 225 (3) (punctuation and footnote

3

omitted). The Court of Appeals did not address whether Licata was in custody but held that the trial court erred in concluding that Paragraph XVI requires police to give a warning that suspects have a right not to incriminate themselves through an affirmative act.[1] Licata, 343 Ga. App. at 877-878 (2). The Court of Appeals thought there was "at least arguably" tension between Price and this Court's construction of Paragraph XVI in cases like Olevik, and properly concluded that any tension was to be resolved by this Court. See id. at 878 (2).

We asked the parties to address this issue by briefing whether Miranda-type warnings are required before a suspect in police custody is asked to perform acts protected by Paragraph XVI. But Licata was not actually in custody when he was asked to undergo the field sobriety tests. Even under Price, Miranda warnings for field sobriety tests are required only when a person is in custody. Price, 269 Ga. at 225 (3) (stating that warning is required "only when the suspect is *in custody*," and holding that, because the defendant was in

---

[1] The State argued before the trial court and to the Court of Appeals that Licata was not in custody at the time he was asked to perform field sobriety tests. The Court of Appeals pretermitted the issue before concluding that the trial court erred in finding that Miranda warnings were required to cover the right not to perform incriminatory acts under Paragraph XVI. See Licata, 343 Ga. App. at 877 (2).

4

custody, the failure to give <u>Miranda</u> warnings rendered the field sobriety test evidence inadmissible (punctuation and footnote omitted; emphasis added)).

Our conclusion that Licata was not in custody is based upon the undisputed facts and a video recording of the roadside interrogation.[2] Generally, mere roadside questioning during a traffic stop does not constitute a custodial situation. See, e.g., <u>Berkemer v. McCarty</u>, 468 U. S. 420, 437-440 (104 SCt 3138, 82 LE2d 317) (1984). The United States Supreme Court has explained that although a traffic stop "significantly curtails" the driver's freedom of movement, such stops are not generally thought to be custodial for two reasons. First, the detention attendant to a traffic stop is usually temporary and brief, with most drivers expecting to answer a few questions and maybe receive a citation before being allowed to continue on their way, while a stationhouse interrogation, in comparison, is often prolonged and the detainee usually knows the questioning will not cease until he provides sufficient information to the police. Id. at 437-438. Second, because traffic stops are conducted in public and usually only by one or two police officers, there is less risk that "unscrupulous

---

[2] Although we typically defer to the trial court's factual findings in this context, when, as here, the controlling facts are not in dispute, because they are discernible from a video, our review is de novo. See, e.g., <u>Smith v. State</u>, 297 Ga. 667, 669 (2) (777 SE2d 453) (2015).

[officers will] use illegitimate means to elicit self-incriminating statements" and the driver's vulnerability or fear of abuse is dampened. Id. at 438-439. Because of these two features, "a person detained as a result of a traffic stop is not in Miranda custody because such detention does not sufficiently impair the detained person's free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." Howes v. Fields, 565 U. S. 499, 510 (132 SCt 1181, 182 LE2d 17) (2012) (quoting Berkemer, 468 U. S. at 437) (punctuation omitted).

With this backdrop, we must examine the totality of the circumstances to determine whether "a reasonable person in [Licata's] position would have thought the detention would not be temporary." Price, 269 Ga. at 225 (3) (punctuation and footnote omitted). In determining whether a suspect is in custody, we must consider the totality of the circumstances without regard for the subjective views of the suspect or the interrogating officer. See Smith v. State, 297 Ga. 667, 668-669 (2) (777 SE2d 453) (2015); Sosniak v. State, 287 Ga. 279, 280 (1) (695 SE2d 604) (2010). No one factor is dispositive in deciding the custody issue, although several important considerations to keep in mind include: "the location of the questioning, its duration, statements made during

the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." Howes, 565 U. S. at 509 (citations and punctuation omitted). The reading of Miranda warnings is another factor to consider, but those warnings alone do not transform a noncustodial interrogation into a custodial one. See, e.g., Sprosty v. Buchler, 79 F3d 635, 642 (7th Cir. 1996) (holding that warning is relevant but not dispositive to custody); Tukes v. Dugger, 911 F2d 508, 515 n.10 (11th Cir. 1990) (reading of Miranda rights may be considered); 2 Wayne R. LaFave, Criminal Procedure § 6.6 (f) (4th ed. 2004) ("The argument that the giving of some of the Miranda warnings itself establishes that the situation was custodial has been rightly rejected, for it would be bizarre if such solicitude for a suspect not actually in custody were deemed to make the suspect's statement subject to suppression under Miranda.").

With these factors in mind, the trial court did not explain why it concluded that Licata was in custody at the time he was asked to perform the field sobriety tests. It appears that the trial court concluded that the detention was not temporary because Licata was visibly impaired, his vehicle was not safe to drive, and the arresting officer asked Licata to move a few feet in order to

perform the field sobriety tests. But as discussed above, these factors did not amount to a custodial situation. See Berkemer, 468 U. S. at 437-440 (although a traffic stop "curtails the 'freedom of action' of the driver" and drivers typically do not feel free to disobey a police directive, the traffic stop is not a per se custodial interrogation triggering Miranda).

Nothing else about the roadside interrogation shows that Licata's detention "sufficiently impair[ed] [his] free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights." Howes, 565 U. S. at 510 (citation and punctuation omitted). It is undisputed that Licata was not handcuffed when the arresting officer asked him to undergo field sobriety tests. The trial court found, and the record confirms, that the arresting officer had not conveyed to Licata that he was going to arrest Licata. The video recording also shows that the police officer did not act in a hostile or coercive manner, did not draw his weapon, or issue threats. See Sosniak, 287 Ga. at 281 (1) (noting that detective was not hostile or accusatory).

The fact that the arresting officer read Miranda warnings to Licata did not make the detention a custodial one in the absence of other factors. Compare Sprosty, 79 F3d at 642-643 (defendant was in custody where at least one officer

8

guarded him for nearly three hours while four other officers conducted a search and officers persistently requested that defendant lead them to incriminating evidence) with Tukes, 911 F2d at 515 (defendant not in custody because he voluntarily went to stationhouse and his freedom of action had not been restricted). The arresting officer gave the Miranda warnings soon after making the initial contact with Licata, and the entire duration of that officer's encounter with Licata was short. According to the trial court, the arresting officer approached Licata at about 9:41 p.m., at which point the Miranda warning was given, and Licata was arrested and read the implied consent notice about ten minutes later.[3] As described above, there was no significant restraint of Licata's freedom of movement during this encounter. These circumstances fall short of establishing that Licata was in custody. See Berkemer, 468 U. S. at 441-442 (defendant was not in custody where he was never restrained prior to arrest, never told detention would not be temporary, and "a short period of time elapsed

---

[3] The trial court found that prior to the arresting officer's arrival, Licata had been detained by another police officer for a brief period of time. There is no evidence that this other officer restrained Licata or told him he would be arrested, and the video recording from the arresting officer's vehicle shows that Licata was left unattended and unrestrained while this officer relayed his observations to the arresting officer. See Mitchell v. State, 301 Ga. 563, 569 (2) (802 SE2d 217) (2017) (holding that defendant was not in custody because, among other things, he was left alone while the officer stepped aside to consult with the sheriff's deputy).

9

between the stop and the arrest"); Mitchell v. State, 301 Ga. 563, 568-569 (2) (802 SE2d 217) (2017) (a reasonable person would not have believed he was in custody where the defendant was not placed in handcuffs and the officer "did not indicate by [his] words or actions that he was going to arrest [the defendant]"). Compare Price, 269 Ga. at 225 (3) (a reasonable person would have believed detention was not temporary where, among other things, the officer informed the defendant she was going to jail regardless of whether she performed field sobriety tests).

Because Licata was not in custody, Price does not apply, and the police were not required to give any Miranda warning, much less one tailored to cover Paragraph XVI rights, before asking Licata to undergo the field sobriety tests. Therefore, although we disagree with the Court of Appeals' rationale, we affirm its reversal of the trial court's suppression of Licata's field sobriety tests.[4]

2. The Court of Appeals also reversed the suppression of Licata's refusal to submit to a breath test. Licata, 343 Ga. App. at 879-880 (3). Given the pretrial posture of this case and our recent ruling in Elliott that the State may not use a suspect's refusal to submit to a breath test at the suspect's criminal trial, we

_____

[4] We leave for another day whether Price was rightly decided.

10

vacate this portion of the Court of Appeals' opinion and remand for further proceedings.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur, except Warren, J., not participating and Bethel, J., disqualified.

Decided March 11, 2019.

Certiorari to the Court of Appeals of Georgia — 343 Ga. App. 874.

W. Scott Smith; Matthew K. Winchester, for appellant.

William A. Finch, Solicitor-General, Adam E. Keller, Assistant Solicitor-General, for appellee.

Jimmonique R. S. Rodgers, Brandon A. Bullard, James C. Bonner, Jr.; Clark & Towne, David E. Clark; Ross & Pines, Andrew S. Fleischman; Miller & Key, J. Scott Key; George H. Hartwig III, District Attorney, Lee Darragh, District Attorney, Samuel R. D'Entremont, Assistant District Attorney; Matthew C. Krull, Solicitor-General; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, David S. McLaughlin, Senior Assistant Attorneys General, Tina M. Piper, Jameson B. Bilsborrow, Assistant Attorneys General, Andrew A. Pinson, Solicitor-General, Ross W. Bergethon, Deputy Solicitor-General; Robert W. Smith, Jr., Gilbert A. Crosby, Peter J. Skandalakis, amici curiae.