300 Ga. 462
FINAL COPY

S16A1721. SOUTHALL v. THE STATE.

BLACKWELL, Justice.

Amos Southall was tried by a Camden County jury and convicted of murder and another crime in connection with the killing of Michelle Hainley. Southall appeals, contending that he was denied due process when the prosecution failed to disclose evidence that a material witness hoped to benefit from his testimony against Southall. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Hainley was killed on February 26, 2008. Southall was indicted on May 21, 2008 and charged with malice murder, felony murder, aggravated assault, rape, unlawful distribution of a controlled substance, and unlawful possession of a controlled substance. His trial commenced on November 26, 2012, and the jury returned its verdict four days later, finding him guilty on all counts except rape. On February 5, 2013, Southall was sentenced to imprisonment for life without the possibility of parole for malice murder and a concurrent term of imprisonment for 30 years for distribution of a controlled substance. The verdict as to felony murder was vacated by operation of law, and the aggravated assault merged into the malice murder. See Malcolm v. State, 263 Ga. 369, 371-374 (4)-(5) (434 SE2d 479) (1993). (Southall asserts that the trial court erred when it failed to "vacate" the felony murder and instead purported to "merge" it with the malice murder. But because the felony murder was vacated by operation of law, Southall was not harmed when the trial court erroneously cited merger as the reason that it was not sentencing him for felony murder. See Gray v. State, 298 Ga. 885, n. 1 (785 SE2d 517) (2016). And as Southall also asserts and the State concedes, no remand for resentencing on aggravated assault is necessary, there being no evidence to establish a "deliberate interval" in the series of wounds. See Schutt v. State, 292

1. "Although no party to this appeal disputes our jurisdiction, it is the duty of this Court to inquire into its jurisdiction in any case in which there may be a doubt about the existence of such jurisdiction." State of Ga. v. Intl. Keystone Knights of the Ku Klux Klan, 299 Ga. 392, 396 (2) (788 SE2d 455) (2016) (citations and punctuation omitted). As set out in footnote 1, supra, Southall is deemed to have filed his motion for new trial on February 4, 2013, the date on which it was stamped and certified by the trial court clerk as filed. See Pirkle v. QuikTrip Corp., 325 Ga. App. 597, 598 (1) (b) (754 SE2d 387) (2014) ("a certificate of the clerk, entered upon the paper at the time it is filed, is the best evidence of such filing"). The judgment of conviction and sentence was signed by the judge and dated the same day, but it was not stamped and certified by the clerk until February 5, 2013, making that the date that the judgment was entered. See Lipscomb v. State, 194 Ga. App. 657 (1) (391 SE2d 773) (1990). See also Titelman v. Stedman, 277 Ga. 460, 461 (591 SE2d 774) (2003) (judgment has

---

Ga. 625, 627 (2) (740 SE2d 163) (2013). Cf. Hulett v. State, 296 Ga. 49, 53-55 (2) (766 SE2d 1) (2014).) Further, possession of a controlled substance merged with distribution of a controlled substance. Southall prematurely filed a motion for new trial on February 4, 2013, and he amended it on December 18, 2013 and October 31, 2014. The trial court denied his motion on March 8, 2016, and Southall timely filed a notice of appeal on April 6, 2016. The case was docketed in this Court for the September 2016 term and was submitted for decision on the briefs.

2

not been entered and is not effective for any purpose until it has been both signed by the judge and filed with the clerk). Although the clerk's index to the record erroneously shows that both the motion for new trial and the sentence were filed on February 6, 2013, we have not found any evidence in the record that the motion for new trial was filed on a date other than February 4, 2013, or that the judgment of conviction and sentence was entered on a date other than February 5, 2013. See Minnich v. First Nat. Bank of Atlanta, 154 Ga. App. 439 (268 SE2d 688) (1980). Because Southall's motion for new trial was filed before entry of the judgment on the verdict, it was premature, and, under our decision in Harrison v. Harrison, 229 Ga. 692 (1) (194 SE2d 87) (1972) (citation omitted), it was "invalid" for that reason. See also Tremble v. Tremble, 288 Ga. 666, 668 (1) (706 SE2d 453) (2011); Moore v. Moore, 229 Ga. 600, 601 (1) (193 SE2d 608) (1972), overruled on other grounds, McCauley v. McCauley, 259 Ga. 72 (377 SE2d 676) (1989); Lipscomb, 194 Ga. App. at 657 (1) ("the motion for new trial was rendered premature and invalid by the delayed filing of the judgment"). This Court also said in Harrison that "[n]o amendment could be filed to such [a] void motion." 229 Ga. at 692 (1) (adding that, "[i]f the amendment to the motion should be considered as a motion for new trial, it was

3

filed long after the time allowed for filing the motion"). See also Tremble, 288 Ga. at 668 (1).

Nevertheless, it is settled that, even if a motion for new trial is premature, "this prematurity will not serve to deprive the appellate court of jurisdiction to review the merits of the appeal in the face of a timely notice of appeal from the order finally disposing of the motion." Gomez-Oliva v. State, 312 Ga. App. 105, 106 (1) (717 SE2d 689) (2011) (citations and punctuation omitted). See also Lipscomb, 194 Ga. App. at 657 (1). Indeed, even though the premature motion for new trial in Harrison was considered "void," this Court decided that "the appeal was filed within 30 days after the entry of the order finally disposing of the motion, and the appeal was timely filed under [OCGA § 5-6-38 (a)]." Harrison, 229 Ga. at 692 (1). Under that authority, Southall's "appeal is properly before this Court and will be considered on its merits." Gomez-Oliva, 312 Ga. App. at 107 (1) (citations omitted).

In Harrison, however, this Court further held as follows: "Error is enumerated on the denial of the motion for new trial. Since the motion was void, there was no error in denying it." 229 Ga. at 692 (2). The Court of Appeals reasonably has understood this holding to mean that an appellate court is

4

required to automatically affirm as to claims of error that are premised on and directed only to a trial court's denial of a prematurely filed motion for new trial. See Gomez-Oliva, 312 Ga. App. at 107 (1), n. 4; Dae v. Patterson, 295 Ga. App. 818, 819 (1) (673 SE2d 306) (2009); Lipscomb, 194 Ga. App. at 657 (1); Hill v. Bailey, 187 Ga. App. 413, 415 (2) (370 SE2d 520) (1988); Joiner v. Perkerson, 160 Ga. App. 343 (287 SE2d 327) (1981). If Harrison and its progeny were applied here, then Southall's claim of error regarding the prosecution's alleged failure to disclose evidence — regardless of whether that claim would have merit had the motion for new trial been timely filed — would not require reversal on appeal because the claim was raised only in the premature motion for new trial.[2]

---

[2] As discussed below in Division 3, Southall claims the prosecution failed to disclose evidence that Harry Jackson believed, in return for his testimony in this case, the State would contact the parole board on his behalf. Prior to trial, Southall filed motions for disclosure of any agreement or arrangement between the State and its witnesses, as required by Brady v. Maryland, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), and Giglio v. United States, 405 U. S. 150 (92 SCt 763, 31 LE2d 104) (1972). He renewed that motion at trial before Jackson's testimony. And Southall's lawyer cross-examined Jackson about his eligibility for parole and how beneficial it would be for the prosecutors to write a letter to the parole board. But it was not until an amendment to his premature motion for new trial that Southall specifically raised the alleged failure of the State to disclose that Jackson believed that he would receive such a benefit. Indeed, Southall could not have raised this contention at trial, as he has relied entirely — both on motion for new trial and in this appeal — upon evidence that did not come into existence, and that he therefore was not aware of, until long after his trial had ended. Moreover, in his appellate brief, Southall complains about the trial court's

Upon closer examination of this issue, however, we have determined that Division 2 of Harrison was incorrectly decided. The timing of a motion for new trial is governed by OCGA § 5-5-40 (a): "All motions for new trial, except in extraordinary cases, shall be made within 30 days of the entry of the judgment on the verdict or entry of the judgment where the case was tried without a jury."[3] The word "within," when used with reference to time, is generally a word of limitation that means "not beyond" or "not later than" — fixing the end, but not the beginning, of a period. See Hodges v. South Ga. Natural Gas Co., 111 Ga. App. 180, 181 (2) (141 SE2d 182) (1965) (statute allowing an appeal "within 10 days" is concerned with "a time *after which* an appeal may not be filed, with

order denying his motion for new trial, and he relies on certain findings of fact in that same order.

[3] When dealing with premature motions for new trial, the Court of Appeals has read our precedent as implicitly distinguishing between civil cases, such as Tremble and Dae, and criminal cases like Rockholt v. State, 291 Ga. 85, 86, n. * (727 SE2d 492) (2012). See Lopez v. State, 326 Ga. App. 770, 770-771, n. 1 (757 SE2d 436) (2014); Juhan v. State, 322 Ga. App. 620, 621, n. 3 (744 SE2d 910) (2013). But the time limit provided in OCGA § 5-5-40 (a) applies to both civil and criminal cases. And although a number of our opinions in criminal cases have mentioned the prematurity of a motion for new trial (which, again, has never worked to deprive this Court of jurisdiction), many of them, like Rockholt, did not involve enumerations that were premised on and directed only to the motion for new trial, and none of them addressed Division 2 of Harrison or otherwise dealt with the proper way to handle such enumerations. "Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." Wolfe v. Board of Regents of the Univ. System of Ga., 300 Ga. 223, 231 (2) (d) (794 SE2d 85) (2016) (citation and punctuation omitted).

6

no regard to the time when filing is premature" (emphasis in original)); <u>Young v. Waldrop</u>, 109 P2d 59, 60-61 (Mont. 1941) (collecting cases holding "that when time is spoken of, any act is 'within' the time named that does not extend beyond it"); <u>Bellion v. Durand</u>, 117 P 798, 799 (Utah 1911) (also collecting cases and holding that statutory requirement that motion for new trial be made "within ten days after the entry of judgment" fixed only the limit beyond which the motion may not be made, and did not fix the first point of time at which it may be made); 86 CJS Time § 21. Consequently, we properly treat a premature notice of appeal — which "shall be filed within 30 days after" entry of the appealable judgment or the order disposing of a motion for new trial, OCGA § 5-6-38 (a) — as effectively filed, vesting jurisdiction in the appellate court, upon entry of the judgment or an order denying a motion for new trial. See <u>Hall v. State</u>, 282 Ga. 294, 295 (1) (647 SE2d 585) (2007); <u>Gillen v. Bostick</u>, 234 Ga. 308, 310-311 (1) (215 SE2d 676) (1975). See also <u>Guyton v. State</u>, 281 Ga. 789, 795 (10) (f) (642 SE2d 67) (2007) (defendant not prejudiced when his lawyer prematurely filed a motion for sentence review that was required to be made "within 30 days" under former OCGA § 17-10-6 (a) (repealed in 2007)).

7

This Court's reasoning in <u>Gillen</u> applies equally to premature motions for new trial. Not only is the wording of OCGA § 5-5-40 (a) very similar in relevant part to that of OCGA § 5-6-38 (a), but treating a premature motion for new trial (like a premature notice of appeal) as effectively filed upon entry of judgment prevents the loss of valuable rights when the validity of the motion "is challenged not because something was done too late, but rather because it was done too soon." <u>Gillen</u>, 234 Ga. at 310 (1). See also <u>Livingston v. State</u>, 221 Ga. App. 563, 566 (1) (472 SE2d 317) (1996) (a whole-court case cited in <u>Hall</u>) ("There is a vast difference between a notice which is filed *beyond* the time allowed by law, and a notice which is filed before it *must* be." (Emphasis in original)). Otherwise, a defendant like Southall, for example, would lose the right to prove to the trial court and the appellate court that the State unconstitutionally withheld certain material evidence during trial, other defendants may lose the right to prove a claim of ineffective assistance of counsel, and any party could lose the right to raise an issue that is required to be addressed after trial. See OCGA § 5-6-36 (a) ("where matters complained of arise or are discovered subsequent to verdict or judgment which otherwise would not appear in the record, such as newly discovered evidence, and in other

8

like instances, a motion for new trial or other available procedure shall be filed and together with all proceedings thereon shall become a part of the record on appeal"). At the same time, the State or other prevailing party is not prejudiced or misled as a result of a premature motion for new trial so long as the motion contains sufficient information about the judgment from which it seeks relief, just as is required for a prematurely filed notice of appeal. See Gillen, 234 Ga. at 311 (1); Livingston, 221 Ga. App. at 565 (1) ("The only problem is that the appellant [or movant] is more prompt than the court, and the [judgment] is entered after the notice [or motion]."). See also OCGA §§ 5-5-42 (requiring that motions for new trial substantially comply with forms that identify the judgment involved); 5-6-37 (notice of appeal must include "a concise statement of the judgment, ruling, or order entitling the appellant to take an appeal"). A premature motion for new trial or notice of appeal "in fact gives the [prevailing party] a head start because it then knows of [the] appeal decision soon after the court pronounces its ruling in open court." Livingston, 221 Ga. App. at 564 (1).

While a late motion for new trial or notice of appeal "fails to keep the case extant" and the opportunity for appeal or motion for new trial is lost after passage of the period of time prescribed for its filing, an early motion for new

9

trial or notice of appeal is simply "dormant in its effect" and not legally cognizable before the judgment about which it complains is entered of record. Livingston, 221 Ga. App. at 566 (1). See also McKeever v. State of Ga., 189 Ga. App. 445, 446 (375 SE2d 899) (1988) (a whole-court decision) (judgment must be entered before motion for new trial can have any effect and before any appeal is possible). Once that judgment is entered, the early motion for new trial or notice of appeal ripens and becomes "as timely as any notice could ever be." Livingston, 221 Ga. App. at 565 (1). See also McCulley v. State, 273 Ga. 40, 43 (4), n. 3 (537 SE2d 340) (2000) (premature notice of appeal "ripened upon the filing of the sentence"). It would be pointless and go beyond the statutory mandate to deem such premature motions for new trial or notices of appeal "void" — so long as they sufficiently indicate the judgment from which relief is sought — when they are filed at any time prior to the expiration of the 30-day time limits in OCGA §§ 5-5-40 (a) and 5-6-38 (a), which are designed "to keep the case moving towards final disposition while affording a reasonable opportunity for the losing party to consider [a motion for new trial or] appeal." Livingston, 221 Ga. App. at 565 (1). See also Blackwell v. Cantrell, 169 Ga. App. 795, 796 (1) (315 SE2d 29) (1984) (appellate practice statutes, including

10

those that require identification of the judgment involved, "were not adopted to set traps and pitfalls by way of technicalities for unwary litigants" (citation omitted)). Accordingly, we conclude that a prematurely filed motion for new trial that sufficiently identifies the judgment involved becomes fully effective upon entry of that judgment, enabling the trial court — and ultimately the appellate court pursuant to a properly filed notice of appeal — to review all of the issues raised in the motion on their merits.[4]

A different conclusion is not required by considerations of stare decisis. "When we consider whether an earlier decision ought to be reexamined, we consider a number of factors, including the age of the precedent, the reliance interests involved, the workability of the prior decision, and most importantly,

---

[4] We note that this conclusion is consistent with the practice in both federal courts and courts in our sister states. See United States v. Myrie, 776 F3d 1280, 1284 (II) (11th Cir. 2015) ("Where a motion is filed before the district court enters judgment and sentences the defendant, courts of appeals normally consider the motion along with the defendant's direct appeal of his conviction and sentence." (Citation omitted)); Xiong v. Marks, 668 SE2d 594, 600 (IV) (A) (N.C. App. 2008) (collecting federal cases and concluding that a motion for new trial may be filed before entry of judgment and that the trial court will have jurisdiction to hear and determine the motion after entry of judgment); New Addition Club v. Vaughn, 903 S2d 68, 72 (III) (Ala. 2004) ("if a party moves . . . for a new trial before the court has entered a judgment, the motion shall be treated as having been filed after the entry of the judgment and on the day thereof"); 11 Wright et al., Federal Practice & Procedure § 2812 (3d ed.) (April 2016 Update) ("Rule 59 (b) sets a maximum time for filing new-trial motions; there is nothing to prevent making a motion for a new trial before judgment has been entered, however." (Footnote omitted)).

11

the soundness of its reasoning." Lejeune v. McLaughlin, 296 Ga. 291, 298 (2) (766 SE2d 803) (2014) (citation and punctuation omitted). Turning first to the most important factor, we already have seen that the cursory analysis in Division 2 of Harrison and its progeny is unsound and inconsistent with the proper interpretation of statutes similar to OCGA § 5-5-40 (a). Second, "[t]he issue is one of appellate procedure, not contract, property, or other substantive rights in which anyone has a significant reliance interest." Sosniak v. State, 292 Ga. 35, 49 (734 SE2d 362) (2012) (Nahmias, J., concurring). Moreover, Division 2 of Harrison has been followed infrequently. See Woodard v. State, 296 Ga. 803, 813 (3) (b) (771 SE2d 362) (2015). And as already discussed, the prevailing party below is not prejudiced by a premature motion for new trial. About the practicality of the precedents at issue, they not only set up a confusing distinction between premature motions for new trial and premature notices of appeal, they also in many cases will require issues best resolved on motion for new trial to instead be deferred until the filing of a petition for writ of habeas corpus. See Kolokouris v. State, 271 Ga. 597, 597-598 (1) (523 SE2d 311) (1999). Regarding the age of Harrison, Division 2 is "neither ancient nor entrenched." Sosniak, 292 Ga. at 49 (Nahmias, J., concurring). We have

overruled precedents as old and older than Harrison, and "without more, that we have been wrong for many years . . . is no reason to persist in the error." Lejeune, 296 Ga. at 298-299 (2) (citations omitted). Accordingly, we overrule Division 2 of Harrison and its progeny, including Gomez-Oliva, 312 Ga. App. at 107 (1), n. 4; Dae, 295 Ga. App. at 819 (1); Lipscomb, 194 Ga. App. at 657 (1); Jessup v. Newman, 191 Ga. App. 772 (383 SE2d 136) (1989); Hill, 187 Ga. App. at 415 (2); Joiner, 160 Ga. App. at 343; and Wall v. Citizens & Southern Bank of Houston County, 153 Ga. App. 29, 30 (2) (264 SE2d 523) (1980). As a result, we will address Southall's enumeration premised on and directed only to the denial of his premature motion for new trial. First, however, we will address the sufficiency of the evidence.

2. Viewed in the light most favorable to the verdict, the evidence shows that on the night of February 25, 2008, Kristopher Robinson picked up Southall and Tara Harris, drove to a hotel in Kingsland after midnight, and introduced Southall to Hainley, who was celebrating her receipt of a $2,000 tax refund. Robinson then left the hotel with Harris and went to Yulee, Florida for several hours. During that time, there were repeated attempts to place calls to Robinson's cell phone from the phone in Hainley's room. During this same

13

period, Southall met a taxi driver at the hotel, shared some cocaine with him, and told him that "there was one girl left in this room, and he was trying to get her out of there." The dispatcher for the taxi company overheard a portion of the conversation between Southall and the driver, and she testified that the person she overheard talking to the driver called after 3:00 a.m., asked for the same driver by name, and "said to just tell him, it's over, it's done, she's dead." Hotel phone records show that a call was made to the same taxi company from Hainley's room at 3:28 a.m. Southall subsequently was in the vicinity of a pay phone at a gas station when the same taxi company received a call requesting a pickup at that location, a pickup occurred down the road, and around 6:00 a.m., the taxi took the customer to the apartment complex where Robinson lived with Jennifer Benjamin. Near that time, Southall appeared at the apartment door, and Benjamin heard him tell Robinson that "I f***ed up, I lost it, . . . there's blood everywhere, she['s] gone."

Several hours later, Hainley was found dead in the bathtub of her hotel room. She had suffered 89 external injuries and 19 internal injuries. All of her injuries occurred around the time of her death, which was caused by multiple blunt-force injuries, strangulation, and drowning. Southall told police that he

14

never entered Hainley's hotel room and did not know who she was. But Southall's fingerprints were on a pizza box in the room, his DNA was identified on a vaginal swab from Hainley's body, and a bathmat found in the woods next to the hotel had both blood that matched Hainley's DNA profile and semen that matched Southall's DNA profile. At trial, Southall testified that he entered Hainley's hotel room and had consensual sex with her, but that while Robinson was talking with Hainley, Southall left the hotel room and never returned. A cousin of Southall's, Harry Jackson, testified that while they were incarcerated in the same cell block for a period of time in 2010, Southall admitted that he beat Hainley to death in an attempt to obtain money from her for Robinson, that he unsuccessfully tried to call Robinson, that he put Hainley in the bathtub and tried to clean up, and that he called a cab to take him to Robinson's home.

The jury rejected Southall's explanation that Hainley was alive when he last saw her and that Robinson was with her, and Southall does not dispute that the evidence is sufficient to sustain his convictions. Nevertheless, we have independently reviewed the record with an eye toward the legal sufficiency of the evidence, as is our customary practice in murder cases. We conclude that the evidence adduced at trial was sufficient to authorize a rational trier of fact to

find beyond a reasonable doubt that Southall was guilty of the crimes of which he was convicted. See <u>Jackson v. Virginia</u>, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979). See also <u>Cheley v. State</u>, 299 Ga. 88, 90 (1) (786 SE2d 642) (2016); <u>Walker v. State</u>, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014) ("When we consider the legal sufficiency of the evidence, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact." (Citation and punctuation omitted)).

3. Southall contends that he was denied due process under <u>Brady v. Maryland</u>, 373 U. S. 83 (83 SCt 1194, 10 LE2d 215) (1963), and <u>Giglio v. United States</u>, 405 U. S. 150 (92 SCt 763, 31 LE2d 104) (1972), because the prosecution failed to disclose evidence that Jackson believed that, in return for his testimony in this case about Southall's jailhouse confession, the State would contact the parole board on Jackson's behalf. It is true that under <u>Brady</u> and <u>Giglio</u>, the State violates due process when it suppresses evidence that materially undermines witness credibility, including evidence about any deals or agreements between the State and the witness. See <u>Wearry v. Cain</u>, ___ U. S. ___, ___ (II) (136 SCt 1002, 194 LE2d 78) (2016); <u>Nwakanma v. State</u>, 296 Ga.

16

493, 496 (2) (768 SE2d 503) (2015); Schofield v. Palmer, 279 Ga. 848, 852 (2) (621 SE2d 726) (2005). But the fact that Jackson believed or hoped "that testifying in [Southall's] trial would benefit him later does not show an agreement." Nwakanma, 296 Ga. at 497 (2) (citations omitted). "[O]ne-sided hope or expectation does not a deal make . . . ." Stewart v. State, 299 Ga. 622, 628 (4) (791 SE2d 61) (2016) (citation omitted). "And there is no evidence that the prosecutor encouraged [Jackson] to believe that he would, in fact, benefit from testifying against [Southall]." Nwakanma, 296 Ga. at 497 (2) (citation and punctuation omitted).

To the extent that Southall relies on certain representations by the State, they do not establish the existence of even an informal agreement. At the hearing on his motion for new trial, Southall presented evidence that, during a calendar call in a criminal prosecution of Jackson in 2014, the prosecutor referred to the upcoming hearing on Southall's motion for new trial and announced that Jackson's case was supposed to have been dismissed about six years earlier and it just never happened. The meaning of these statements is not entirely clear. Any connection between Southall's and Jackson's cases was left unexplained, and Jackson's testimony in Southall's case had occurred just two

17

years earlier, not six years. See Capers v. State, 220 Ga. App. 869, 875 (4) (470 SE2d 887) (1996) (if no agreement to dismiss by nolle prosequi existed, "no disclosure was possible, much less required"). Moreover, Southall contends only that Jackson expected contact by the prosecutor with the parole board, and not the entry of a nolle prosequi in some pending prosecution. Southall also presented evidence in support of his motion for new trial showing that, long after his trial, Jackson said that an investigator had been telling him that the district attorney was going to do something after Southall's motion for new trial, and Jackson also said that "they" told him that the district attorney was going to contact the parole board after the "trial" was over. But both the timing of the alleged statements to Jackson and any connection between Jackson's case and his testimony at Southall's trial is unclear.

Accordingly, the evidence on which Southall relies does "not suggest the existence of even an informal agreement," Nwakanma, 296 Ga. at 496 (2), for Jackson to testify at Southall's trial in exchange for the prosecutor's help with the parole board. Cf. Wearry, 136 SCt at 1004-1006 (I) (B), (II) (Brady required disclosure of the fact that, before Wearry's trial, police officers told a witness for the State who had twice sought a deal to reduce his existing sentence that

18

they *would* talk to the district attorney *if* he told the truth). Moreover, both during and after Southall's trial, the prosecutor, the investigators, and Jackson himself repeatedly denied the existence of any such promise or agreement. Consequently, the trial court found an absence of evidence of any agreement, this finding "was not clearly erroneous, but rather was authorized, and there was no due process violation." Nwakanma, 296 Ga. at 497 (2) (citations and punctuation omitted). See also Glidewell v. State, 279 Ga. App. 114, 119 (3) (630 SE2d 621) (2006), overruled on other grounds, Reynolds v. State, 285 Ga. 70 (673 SE2d 854) (2009).

Judgment affirmed. All the Justices concur.

Decided January 23, 2017.

Murder. Camden Superior Court. Before Judge Harrison.

Michael W. Tarleton, Alex G. Smith, for appellant.

Jacquelyn L. Johnson, District Attorney, Andrew J. Ekonomou, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.