**SECOND DIVISION
MILLER, P. J.,
RICKMAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 1, 2019**

# In the Court of Appeals of Georgia

A19A1268. CARMICHAEL v. THE STATE.

REESE, Judge.

A Chattooga County jury found James Carmichael ("the Appellant") guilty of armed robbery, robbery, aggravated assault, possession of methamphetamine, two counts of possession of a firearm by a convicted felon, three counts of possession of a firearm during the commission of a felony, and three counts of possession of a firearm by a convicted felon during the commission of a crime.[1] The trial court sentenced him as a recidivist,[2] to serve a life sentence without the possibility of

---

[1] OCGA §§ 16-8-41 (a); 16-8-40 (a) (2); 16-5-21 (a) (2); 16-13-30 (a); 16-11-131 (b); 16-11-106 (b) (1); 16-11-133 (b) (1).

[2] See OCGA §§16-11-106 (c); 16-11-133 (c); 17-10-7 (a - c).

parole, followed by 45 years in confinement with no possibility of parole, as well as a consecutive sentence of 13 more years in confinement.

The Appellant seeks review of the denial of his motion for new trial, arguing that the trial court erred by permitting him to withdraw his motion to bifurcate the trial, and permitting evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)"), as well as evidence of his prior convictions. He also argues that he received ineffective assistance of counsel when trial counsel withdrew his motion to bifurcate and failed to object to receiving untimely notice pursuant to Rule 404 (b). For the reasons set forth infra, we affirm.

Viewed in the light most favorable to the jury's verdict,[3] the record shows that, Tommy Wilson, an admitted drug addict, testified that he met the Appellant on January 22, 2016, through Paige Blalock, Wilson's drug dealer, when Blalock brought the Appellant to Wilson's home, where Wilson lived with his cousin, P. W. Wilson testified that, on that day, Blalock brought methamphetamine, and Wilson traded his handgun for the drugs. He also held Blalock's cell phone as collateral because she did not have enough drugs to cover the cost of the gun. Three days later,

---

[3] See *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

Blalock and the Appellant returned to Wilson's home and Blalock retrieved her cell phone. Blalock left the Appellant at Wilson's home, leaving him with Wilson and P. W., and Wilson noticed that the Appellant carried the handgun that he (Wilson) had traded to Blalock.

Wilson testified that the Appellant was angry that Blalock left him at Wilson's house, stating, "[Blalock] left with the money." The three men used methamphetamine, and the Appellant spent the night at Wilson's home. Wilson testified that, on January 26, the Appellant stated that he wanted to go shopping for something to drink. Wilson further testified that, at around 2:00 p.m., he, the Appellant, and P. W. took Wilson's Dodge Durango and, at the Appellant's direction, Wilson drove to a back alley behind TJ's Package Store. Wilson testified that, as he drove to the store, he saw the Appellant put on pink gloves and a mask that looked like "a folded up poncho" that covered his entire face. According to Wilson, the Appellant exited the truck while wearing Wilson's hooded camouflage jacket and carrying Wilson's cell phone and the handgun.

Wilson testified that, while the Appellant was in the package store, Wilson drove around near the store because he "fear[ed] for [his] life" and the Appellant had told him "not to sit [in the alley]." As he continued driving, Wilson saw the Appellant

3

leave the package store wearing the mask and pink gloves, and carrying "two liquor bottles and a [plastic] bag." The Appellant got into Wilson's vehicle, and Wilson drove back to his residence. Wilson testified that, after arriving at his home, he did not want the Appellant to come inside, telling him that "whatever [the Appellant] was going to do[,] he was going to have to do it out in the front yard[.]" The Appellant responded by putting the two liquor bottles on Wilson's front porch and pointing the handgun at Wilson. Wilson testified that Blalock drove up and picked up the Appellant from the front yard. He further testified that he found his camouflage jacket inside his vehicle. P. W. put the liquor bottles in a bookbag and "dumped it [into the Chattooga River]." In the meantime, Wilson saw that a picture of his Durango had been "posted all over Facebook[ ]" by law enforcement. Wilson pled guilty to being a party to the armed robbery and for drug possession, and he identified the Appellant at trial as the person he had dropped off and picked up from the package store.

At around 4:00 p.m. on January 26, 2016, while M. D. worked at TJ's Package Store, a black man wearing a "solid" face mask, cap, camouflage jacket, and pink gloves walked into the store with a "chrome looking" handgun that he pointed at M. D. The robber told M. D. to "open the register." M. D. put his hands in the air and told the robber, "just calm down, you can have the money[.]" The robber walked

4

around the counter, and while still pointing the gun, told M. D. to get a plastic bag and put the money into it. M. D. complied, and the robber backed away from the counter with the bag of money. The robber grabbed a pint of liquor, telling M. D. "not to move[.]" M. D. told the robber, "you can have [the money,] I'm going to go to the cooler and wait." The robber told M. D. that he (M. D.) needed to get in to the cooler "now[.]" M. D. walked to the cooler and grabbed the door handle. M. D. turned around, walked up one of the store aisles, after hearing the door bell "ding," and saw that the robber had left. When M. D. did not see anyone in the parking lot, he called 911 and the store's owner. M. D. testified that a jacket and shoes in evidence were consistent with those worn by the robber. M. D. also described the store's video surveillance system and authenticated the surveillance footage of the incident, and the video was played for the jury.

In addition to this evidence about the instant crimes, the State also introduced evidence of three prior armed robberies committed by the Appellant in 2002.[4] K. P., a former owner of a convenience store located in a neighborhood in Floyd County, testified that, at around 8:00 p.m. on November 21, 2002, a man, wearing a mask and

---

[4] Before this evidence was presented, the trial court gave a timely limiting instruction to the jury.

gloves, pointed a handgun at him, and said, "give me all the money [that] you have." K. P. told his employee to remove the money from the store's safe, while the robber continued to point the gun at him. K. P. testified that the employee followed K. P.'s instructions, "wrapped [about $4,000 in cash] in a paper bag and gave it to [the robber]." He further testified that the robber's mask covered his entire face, except for his eyes. K. P. testified that he could not identify the robber at the time the robbery occurred. However after the robber pled guilty to the armed robbery and two counts of aggravated assault, K. P. realized that the robber was the Appellant, who had been a regular customer at his store. A certified copy of the conviction and the Appellant's 20-year sentence were admitted into evidence over the Appellant's objection.

R. S. testified that, on the evening of December 19, 2002, she worked at a "drive through" package store located in Gordon County. She testified that a woman bought a bag of chips, but later returned to exchange the bag. When R. S. turned around, she saw the woman, standing to the side, and she saw a black man wearing a "hunting mask" that covered his face, except for his eyes, pointing a "silver pistol" at her. When the robber told her to give him the money, R. S. walked into the store's cooler. R. S. testified that, while she was in the cooler, she heard a gunshot. When R. S. left the cooler, she discovered that the robber had taken the cash register. R. S.

testified that the robber was a stranger, and she did not know if he had been a customer of the store prior to the robbery. R. S. testified that the Appellant pled guilty to the armed robbery and possession of a firearm during the commission of a crime. A certified copy of the conviction and the Appellant's 25-year sentence were admitted into evidence over the Appellant's objection.

A. C. testified that at approximately 2:00 a.m. on December 29, 2002, she was working at a Texaco gas station and convenience store in Gordon County. While she was a short distance away from the cash register, a black man wearing a ski mask jumped over the store countertop and pointed a handgun at her. A. C. testified that the robber's ski mask did not cover his eyes or his mouth. The robber demanded the money from the cash register and took a "bank bag" out of the store's safe. A. C. testified that the robber fled in a vehicle, but was arrested that same day. According to A. C., she was unable to identify the robber because of the mask, and she did not know the Appellant. A certified copy of the Appellant's guilty plea to armed robbery and his 20-year sentence were admitted into evidence over the Appellant's objection.

On February 1, 2016, officers with the Chattooga County Sheriff's Department and other law enforcement agencies executed a search warrant for Room 109 of a

motel in Chattooga County, where they arrested the Appellant and another man, and seized a methamphetamine pipe and a loaded handgun.

After his conviction on the instant charges, the Appellant filed a motion for new trial. The trial court conducted a hearing and denied the Appellant's motion. This appeal followed.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[5] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[6]

"The standard of *Jackson v. Virginia*[7] is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the

---

[5] 443 U. S. at 319 (III) (B).

[6] *Walker v. State*, 329 Ga. App. 369, 370 (765 SE2d 599) (2014) (punctuation and footnote omitted).

[7] 443 U. S. at 319 (III) (B).

8

crime charged."[8] With these guiding principles in mind, we turn now to the Appellant's specific claims of error.

1. The Appellant argues that the trial court erred by allowing him to withdraw his motion to bifurcate the trial. In his appellate brief, the Appellant failed to provide argument or citations of authority in support of this enumerated error. Therefore, we deem this argument abandoned.[9]

2. The Appellant argues that the trial court erred in permitting evidence of his three prior armed robbery convictions and sentences under Rule 404 (b). He also contends that the trial court erred in allowing the sentencing information from the three prior convictions. We affirm for the reasons set forth below.

Rule 404 (b) states, in pertinent part, that

[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including,

---

[8] *Bautista v. State*, 305 Ga. App. 210, 211 (1) (699 SE2d 392) (2010).

[9] See Court of Appeals Rule 25 (c) (2) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned."); see also Court of Appeals Rule 25 (c) (1) ("The sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly.").

but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

OCGA § 24-4-403 ("Rule 403") provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Construed together,

extrinsic act evidence may be admitted if a three-part test is met: (1) the evidence is relevant to an issue in the case other than the defendant's character, (2) the probative value is not substantially outweighed by the danger of unfair prejudice as required by Rule 403, and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the prior act.[10]

During the Rule 404 (b) hearing, the State sought to admit the Appellant's prior convictions to show "intent and knowledge, that [the Appellant] had a willingness to use a firearm to get money to enrich himself."[11] The trial court ruled that the State could present all three prior guilty pleas of the Appellant's previous convictions for

[10] *Jones v. State*, 301 Ga. 544, 545 (802 SE2d 234) (2017).

[11] See *State v. Jones*, 297 Ga. 156, 162-163 (2) (773 SE2d 170) (2015) (holding that evidence of other acts is "relevant if the State articulates a clear hypothesis showing that the evidence offered has any tendency to prove or disprove the existence of any consequential fact independent of the use forbidden by Rule 404 (b)").

armed robbery, finding they were "clearly relevant on the issue[s] of knowledge, intent, identity, motive[,] and opportunity[,]" and they met "all the tests [under Rule 403]" and were "clearly admissible." Trial counsel did not object to the trial court's ruling.

Generally, "when an appellate court reviews the admission of Rule 404 (b) evidence and the proper application of the Rule 403 balancing test, the trial court's decision will not be disturbed unless there is a clear abuse of discretion."[12] However, "where, as here, a defendant has not timely objected to the evidence, we review for plain error."[13] To establish plain error, the Appellant must demonstrate that

> an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error —

---

[12] *Jones*, 301 Ga. 548 (2).

[13] *Hamlett v. State*, 350 Ga. App. 93, 99 (2) (828 SE2d 132) (2019) (citations omitted).

11

discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.[14]

Here, the Appellant cannot show plain error in the admission of his prior convictions. Before any testimony of the Appellant's prior convictions, the trial court gave a limiting instruction that the testimony of witnesses K. P., R. S., and A. C. and the State's Exhibits 22, 23, and 24 were relevant only to the current charges against the Appellant contained in Counts 1 through 10 in the indictment to show knowledge, intent, identity, motive and opportunity.

Despite the Appellant's argument that the trial court erred in permitting the introduction of his prior convictions and allowed the sentencing information to "go out" to the jury were prejudicial, we presume that the jury followed the trial court's instructions.[15] Further, although the trial court permitted the evidence for additional reasons under Rule 404 (b) than the State articulated, the trial court both properly

---

[14] *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011) (citations and punctuation omitted).

[15] See *Brown v. State*, 300 Ga. 446, 449 (3) (796 SE2d 283) (2017 (Absent evidence that the jury failed to follow the trial court's proper limiting instruction to consider the defendant's prior conviction only for the count of criminal gang activity, "we must presume that the jury followed this instruction.") (citation omitted).

admitted the evidence and gave a limiting instruction for the use of that evidence.[16]

Thus, in these circumstances, the trial court's failure to limit the use of the similar transaction evidence was not reversible error.

3. The Appellant argues that he did not receive effective assistance when trial counsel withdrew his motion to bifurcate the trial and failed to object to untimely notice of the Rule 404 (b) evidence.

Generally, to prevail on a claim of ineffective assistance,

a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. The criminal defendant must overcome the strong presumption that trial counsel's conduct falls

---

[16] See *Matthews v. State*, 294 Ga. 50, 54 (3) (751 SE2d 78) (2013) (no reversible error where the trial court properly admitted similar transaction evidence under the Old Evidence Code for more purposes than the State requested); *Looney v. State*, 232 Ga. App. 828, 829 (3) (503 SE2d 79) (1998) (no reasonable possibility that overbroad similar transactions instructions might have contributed to the conviction); see generally *Jordan v. State*, 230 Ga. App. 560, 561 (497 SE2d 48) (1998) (no reversible error when the trial court's charge to the jury on similar transaction evidence included identity and state of mind as permissible purposes even though the State did not request admission of the evidence for these purposes). Although *Matthews v. State*, *Looney v. State*, and *Jordan v. State* all involve challenges to the jury instructions, they are still analogous to this case because they all discuss the trial court admitting similar transaction evidence for additional purposes than the State requested.

within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[17]

Either the performance or the prejudice prongs of the ineffectiveness inquiry need not be proven if the defendant fails to prove the other prong.[18]

"An appellate court evaluates counsel's performance from counsel's perspective at the time of trial. As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel."[19] In other words, "hindsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance for an ineffective assistance of counsel

---

[17] *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003) (citations and punctuation omitted).

[18] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993) ("Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one.") (citing *Strickland*, 466 U. S. at 697).

[19] *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001) (citation and punctuation omitted).

claim."[20] A trial counsel's trial tactics and strategic decisions, "no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them."[21]

(a) The Appellant contends that he received ineffective assistance of counsel when trial counsel withdrew his motion to bifurcate the trial. Specifically, the Appellant argues that, "[i]nstead of seeking to remove the presentation of prior conviction evidence, trial counsel attempted to rely on a stipulated 'Old Chief[ ]' motion which resulted only in a minimal redaction of a single indictment."

The Supreme Court of Georgia explained that "*Old Chief* clarifies that an offer to stipulate to an issue does not eliminate the relevance of the issue under [OCGA § 24-4-401 ("Rule 401")] but rather is one factor that the court should consider in making the determination under Rule 403."[22]

---

[20] *Dority v. State*, 335 Ga. App. 83, 96 (4) (780 SE2d 129) (2015) (citation and punctuation omitted).

[21] *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008) (punctuation and footnote omitted).

[22] *Hood v. State*, 299 Ga. 95, 102 (4), n. 4 (786 SE2d 648) (2016) (reviewing defendant's rejected offer to stipulate to intent under *Old Chief* conducted under the first prong of the Rule 404 (b) test).

Prior to trial, the Appellant filed a motion to bifurcate arising from two separate indictments, seeking to have the jury return a verdict on the charges of armed robbery, aggravated assault, possession of methamphetamine, and possession of a firearm during the commission of a felony before the jury considered charges of possession of a firearm by a convicted felon. In his motion, the Appellant argued that he should have been able to bifurcate the trial on the second indictment so that the jury could consider the possession of methamphetamine charge separately from the firearm charge. He agreed to stipulate that he was a convicted felon at the time of the crimes. Just before the State rested its case-in-chief, the trial court instructed the jury that "when a stipulation is entered into as to facts by the parties, you can accept those facts as being true without any further proof." The prosecutor then stated, "[p]rior to January 26, 2016, [the Appellant] had been convicted of a felony in a Superior Court of this state[.]"

Thus, we must analyze the evidence under the *Strickland* standard to determine whether trial counsel was ineffective. In resolving an ineffective assistance of counsel claim, a trial court is required to make specific factual findings.[23] While this Court

---

[23] See *Gomez-Oliva v. State*, 312 Ga. App. 105, 107 (3), n. 5 (717 SE2d 689) (2011) (noting that remand is proper where the trial court fails to make specific factual findings regarding defendant's ineffective assistance of counsel claim and the

normally does not resolve claims in the first instance, ineffective assistance of counsel claims constitute a partial exception in that "remand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in *Strickland*."[24]

Here, the record is sufficient for us to resolve the Appellant's ineffective assistance of counsel claim. Trial counsel testified that he did not believe that bifurcation would be of any assistance to his defense and that he instead attempted to stipulate to the Appellant's status as a convicted felon. Putting aside the wisdom of this tactic, it is clear that the decision to withdraw the motion to bifurcate was within the realm of reasonable trial strategy, and so trial counsel did not provide deficient performance.[25]

---

appellate court cannot determine from the record that defendant can meet the requirements under *Strickland v. Washington*), overruled on other grounds by *Southhall v. State*, 300 Ga. 462, 468 (1) (796 SE2d 261) (2017).

[24] *Anthony v. State*, 302 Ga. 546, 554 (V) (807 SE2d 891) (2017) (citation omitted); see also *Gomez-Oliva*, 321 Ga. App. at 107 (3), n. 5 (declining to remand the case on the defendant's ineffective assistance of counsel claims, despite the trial court's failure to make specific factual findings on those claims, because the record was sufficient to show that the defendant could not establish that he received ineffective assistance of counsel).

[25] See *Jackson v. State*, 304 Ga. 827, 829-830 (2) (822 SE2d 198) (2018) (trial counsel was not ineffective for withdrawing a request to bifurcate due to a trial

(b) The Appellant asserts that he received ineffective assistance of counsel when trial counsel waived the notice requirement under Rule 404 (b). We disagree.

Under Rule 404 (b), "[t]he prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial." The Appellee concedes in its appellate brief that it "failed to meet the ten-day requirement" under OCGA § 17-16-4 to provide the Appellant an opportunity to view the discovery and interview undisclosed witnesses.[26]

During the motion for new trial hearing, trial counsel testified that he did not object to the untimely discovery because when he first started representing the Appellant, in the early stage of the case, the State had given him copies of the prior convictions and the incident reports, so he (trial counsel) knew about the crimes well before trial. According to trial counsel, "I knew [that the prosecutor] was going to have problems with two of his witnesses. I didn't see any benefit of continuing [the

---

strategy to attempt to stipulate to the defendant's felon status instead of bifurcating the trial to avoid having prior convictions entered into evidence).

[26] See OCGA § 17-16-6 (failure to comply with discovery requirements).

18

Appellant's] case on the strength of the lack of notice with the [Rule 404 (b)] evidence. I quite frankly thought if we were going to catch lightning in a bottle, it was going to be then." He further testified that it was a "strategic decision[,]" and that he did not see any benefit to be gained "by continuing the case."

> Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result. Although another lawyer may have conducted the defense in a different manner and taken another course of action, the fact that [the Appellant] and his present counsel disagree with the decisions made by trial counsel does not require a finding that [the Appellant's] original representation was inadequate.[27]

As shown above, trial counsel clearly used trial strategy in deciding not to object to the untimeliness of the Rule 404 (b) notice. Further, the Appellant has not shown that, had trial counsel objected, there was a reasonable probability that the outcome of his trial would have been different.[28]

*Judgment affirmed. Miller, P. J., and Rickman, J., concur.*

---

[27] *Hazelrigs v. State*, 255 Ga. App. 784, 786 (2) (567 SE2d 79) (2002) (punctuation, citation and footnote omitted); see *Gray*, 291 Ga. App. at 579 (2).

[28] See *Grier*, 273 Ga. at 365 (4).